## SUAREZ *v.* PUMPELLY and others.

The owner of land in fee, executed declarations or certificates of trust to sundry persons, by which he acknowledged that each owned an equal share therein, and agreed to hold the land in trust for them, and to exercise a power in trust to sell and dispose thereof for their benefit, and to divide the proceeds amongst them ; and if directed by them, to allot, and divide and set apart the land to and among such owners. The validity of the trusts not being questioned,

*Held,* that each holder of a certificate had an interest in the covenant and powers contained in the same. That the powers were to be exercised by the declarant personally ; and that he could not delegate them, or substitute other persons to execute them in his stead.

The declarant's economical conduct of the trust, his skill and success in effecting a sale, and his judgment and impartiality in making a partition, were elements of the contract between him and the beneficiaries, and formed a part of the inducement for their purchase of the shares or certificates.

On the trustee's becoming incapable of executing a trust, the court of chancery will carry it into execution in behalf of the parties interested.

Nov. 13, 1844, and Jan. 8, 1845 ; January 31, 1845.

ON the 12th day of October, 1836, Joseph L. Joseph and wife conveyed to John L. Graham in fee, two equal undivided third parts of a farm in Southport, Chemung county, containing about four hundred acres.

On the 22d of April, 1837, Mr. Graham executed twenty declarations of trust under his hand and seal, each of which recited

the conveyance to him from Joseph and wife, and then proceeded in these words;

" And whereas I have received such conveyance and hold the said premises in trust, and to exercise a power in trust for and on behalf of certain persons entitled to share in the proceeds and profits thereof, of whom William P. Powers of the city of New York is one, and whereas such property is valued at the sum of eighty thousand dollars, and the same has been distributed and allotted in eighty shares, each share being of the value of one thousand dollars. Now know ye, that in consideration of the sum of one thousand dollars, this day paid to the said Joseph L. Joseph by the said William P. Powers, being his proportion of the purchase money of such premises, I the said John Lorimer Graham, do declare, certify and make known, that I have taken such conveyance, and hold such premises in trust and for the purpose of exercising a power in trust of selling and disposing of the same and every part and parcel thereof, in manner following, to wit : to sell the whole or such portion thereof as the persons holding a majority of the said shares shall specify, at such time or times and at public or private sales, and for cash or convertible securities, and upon such notice, as they shall direct. And out of the proceeds of such sale or sales as shall be made, first to pay all necessary and proper expenses, and after such payments, then to divide and apportion such net proceeds as they shall from time arise, to and among the holders of such shares respectively, and to pay to the said William P. Powers or his assigns, one-eightieth part of such net proceeds as the same shall arise. And further, in case it shall be so directed by the holders of a majority of such shares, then to allot and divide and set apart such premises, or any portion of of them remaining unsold, to and among the said several holders of shares therein."

On each of these instruments there was indorsed an acknowledgment signed by J. L. Joseph and stating that he had received from William P. Powers the sum of one thousand dollars being the consideration monies expressed in the instrument. And there was also indorsed on each, a blank assignment signed and sealed by Powers, in the presence of a witness in the words following, viz.

"For value received, I do hereby grant, bargain, sell, assign, transfer and set over unto
the within instrument of writing, and all my right, title, interest, claim and demand in and to the premises therein particularly mentioned and described. To have and to hold the same to him and his heirs and assigns forever."

At the same time Graham executed twenty like instruments to W. G. Wood, twenty to W. English and twenty to T. T. Greasley; all of which were indorsed in the same manner.

These declarations were then delivered to the various parties in interest. None of them were recorded in the county of Chemung. At the time this suit was commenced, the complainant held and owned for the benefit of a foreign house, ten of the declarations of trust or certificates, and Harmon Pumpelly held and owned sixty-seven. The parties were ignorant as to the holder of the three remaining certificates, which were three of those issued in the name of W. G. Wood.

On the 26th of October, 1841, Mr. Graham being apprehensive that judgments or decrees would be docketed against him, which would become a lien on the legal title to the lands in question, in order to secure the holders of the certificates from the embarrassments which might ensue, and with the advice and direction of the holders of forty-seven of the same, conveyed the whole premises in fee to Augustus W. Clason, Jr., and Mordecai Ogden.

On the 29th of July, 1843, Mr. Pumpelly, owning sixty-seven of the certificates, directed Messrs. Clason and Ogden to advertise the premises for sale, and to sell them at auction to the highest bidder, at the capitol in the city of Albany on the 6th of September ensuing; and they were advertised accordingly, in several newspapers. On the day appointed, the premises were, sold in pursuance of the advertisement, and were purchased by Mr. Pumpelly for $5100, to whom a deed was executed by Messrs. Clason and Ogden.

On the same 4th of September, prior to the sale, the bill in this cause was filed against Clason, Ogden, and Pumpelly together with A. Gordon, one of the complainant's beneficiaries. The bill prayed to restrain the sale then advertised, and that the pre-

mises might be sold or divided under the direction of the court. I charged that Graham's grantees had notice of the trusts on which he held the title, and that his conveyance and substitution was made without the complainant's consent. The complainant contended that Graham had no power of substitution, and that the persons to whom he had conveyed, could not execute the trusts in his stead; and if they could, that their attempted execution of them, was defective.

Messrs. Clason, Ogden and Pumpelly, answered, and claimed that the conveyance by Graham and the sale to Pumpelly, were valid. Clason and Ogden claimed no interest in the premises, nor any right, other than to execute the trusts in the manner which Graham had undertaken by the certificates. They had received from Pumpelly and proffered to the complainant, his share of the proceeds of the sale.

*C. B. Moore* and *F. B. Cutting*, for the complainant.

*A. W. Clason, Jr.*, for himself and M. Ogden.

*M. Hoffman*, for H. Pumpelly.

THE ASSISTANT VICE-CHANCELLOR.—The deed from Joseph to Graham, appears to have vested the latter with an absolute and unqualified estate in fee, on the 12th of October, 1836.

The declarations of a trust in the lands conveyed, executed by Graham in April following, could not have the effect to divest the absolute estate acquired by the deed.

By those instruments, he declared that he was a trustee of the lands which had been thus conveyed to him. He covenanted to hold them in trust, and to exercise certain powers in trust in the disposition of the lands and their proceeds.

The validity and effects of those powers, are not called in question by any of the parties; and the defendants concede, nay assume, on their part, that on the conveyance by Graham to Ogden and Clason, the latter took the property subject to the execution of those powers.

The questions are, whether Ogden and Clason could rightfully

execute the trust powers; and if they could, was their attempted execution of them conformable to the declarations of trust.

The powers to be exercised were; to sell the premises, or such portion thereof as the majority of shares should specify, at such times, at public or private sale, and on such notice and terms, as the majority of shares should direct. Out of the proceeds to pay all proper expenses, and apportion and divide the residue to and among the holders of the shares. And if so directed by a majority of the shares, to allot, divide and set apart, the unsold premises, to and among the shareholders.

The instrument contains no reservation or provision of a power of appointment or substitution by Graham, of any person or persons, to do these acts in his stead. Upon such an instrument, delivered to each shareholder, each appears to have paid the price or consideration for his share. Each shareholder thus acquired a right and interest in the covenants and powers contained in the declaration of trust.

The powers were to be executed by Graham personally. The manner of their execution, was important to the parties in interest. His skill and success in effecting a sale; his economical conduct of the trust; and his judgment and impartiality in making a partition, if that should become necessary; were elements of the contract which the parties entered into by this trust deed, and which the court upon the construction of the trust, must infer were a part of the inducement for the purchase of the shares.

It seems to me perfectly clear, that such powers cannot be delegated, without an express provision in the deed creating the powers, or the consent of all the parties.

The conveyance from Graham to Ogden and Clason therefore, while it may have transmitted the legal title, did not clothe them with the powers in trust which are contained in the declarations executed to the shareholders.

They could not proceed to sell at auction or otherwise, under the direction of the majority of the shareholders; and the proceeding instituted for that purpose, as stated in the bill, was nugatory.

This conclusion renders it unnecessary to look into the mere

regularity of that proceeding, in respect of the forms prescribed by the trust.

A sale under the direction of the court, is doubtless the proper mode of winding up this trust. But all the necessary parties for that purpose, are not before the court.

The three outstanding shares, and Mr. Graham should be brought in. If the owners of the three shares cannot be ascertained, it may suffice to bring in as defendants, the persons in whose names the declarations of trust for those shares were issued.

In the meantime, an order may be entered directing the cause to stand over for the purpose of adding those parties, and reserving all further questions and directions.(a)

---

(a) The complainant made further parties, and on the cause being brought to a hearing at a subsequent term, a decree was made directing a sale of the premises, and a distribution of the proceeds among the holders of the certificates. The sale and deed to Pumpelly were set aside.